## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **Democrats for an Informed Approach to Gender (DIAG),** | |
| *Plaintiff,* | Civil Action No. 1:26-cv-00894 |
| v. | Jury trial demanded |
| **Alexi Giannoulias**, in his official capacity as Illinois Secretary of State, | |
| *Defendant.* | |

## VERIFIED CIVIL RIGHTS COMPLAINT

Plaintiff Democrats for an Informed Approach to Gender brings this verified civil rights complaint for declaratory and injunctive relief against Alexi Giannoulias in his official capacity as Illinois Secretary of State.

## INTRODUCTION

1.     Plaintiff Democrats for an Informed Approach to Gender (DIAG), a nonprofit organization, advocates for evidence-based care for those with distress about their sex and the protection of the sex-based rights of women and girls. To support its advocacy, DIAG wants to solicit charitable contributions in Illinois. The Supreme Court has "placed charitable solicitations by organizations in a category of speech close to the heart of the First Amendment." *Gresham v. Peterson*, 225 F.3d 899, 904 (7th Cir. 2000) (citing *Village of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 632 (1980)).

2. But Illinois Secretary of State Alexi Giannoulias is enforcing a law that prevents DIAG from exercising First Amendment rights without prior approval. And DIAG cannot get Illinois's approval because Illinois law forbids nonprofits' names from using words associated with established political parties—like the words "democrat" and "republican"—unless the established party consents. 805 ILCS 105/104.05(a)(6) (the Party Name Provision). In other words, the Party Name Provision requires DIAG to obtain a private actor's permission before the government will allow DIAG to exercise its First Amendment right to solicit charitable contributions, creating a statutory scheme that violates the First and Fourteenth Amendments at every turn.

3. Illinois's Party Name Provision is a unique impediment to nonprofits' First Amendment activity. DIAG successfully registered as a nonprofit with the federal government and in other states. Illinois is the only state in which DIAG attempted to register as a charitable organization and was required to get permission from a political party due to its name.

4. The Party Name Provision is a content-based speech restriction that singles out specific subjects—and even specific terms—for differential treatment. *See Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). The provision is thus "presumptively unconstitutional." *Id.*

5. The provision is a speaker-based speech restriction, allowing political parties and nonprofits they bless to use specific words in their names while denying other nonprofits use of those same words. This speaker-based restriction is especially

"constitutionally problematic" because it grants political parties a "heckler's veto" over certain nonprofit names. *Hill v. Colorado*, 530 U.S. 703, 734 n.43 (2000) (quoting *Reno v. Am. C.L. Union*, 521 U.S. 844, 880 (1997)).

6.     Content- and speaker-based speech restrictions, like the Party Name Provision, are subject to strict scrutiny. *See Sorrell v. IMS Health Inc.*, 564 U.S. 552, 571 (2011). "Content-based laws merit this protection because they present, albeit sometimes in a subtler form, the same dangers as laws that regulate speech based on viewpoint," and "[l]imiting speech based on its 'topic' or 'subject' favors those who do not want to disturb the status quo" and "may interfere with democratic self-government and the search for truth." *Reed*, 576 U.S. at 174 (Alito, J., concurring). And the Party Name Provision fails strict scrutiny, "the most demanding test known to constitutional law." *City of Boerne v. Flores*, 521 U.S. 507, 534 (1997).

7.     The provision also silences nonprofits before they solicit contributions, thus operating as a prior restraint, the "most serious and … least tolerable infringement on First Amendment rights." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976).

8.     Without this Court's intervention, the Secretary will continue to enforce the Party Name Provision against DIAG. To protect its First Amendment right to solicit charitable contributions, DIAG brings this lawsuit to enjoin the Secretary's enforcement of the Party Name Provision.

## JURISDICTION AND VENUE

9.     This action arises under the First and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1983 and 1988, and 28 U.S.C. §§ 2201–2202.

10.     This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

11.     Venue is proper under 28 U.S.C. §§ 1391(b)(1) because the Secretary resides within this judicial district and maintains an office here.

## PARTIES

**Plaintiff**

12.     DIAG is a California-incorporated nonprofit comprising "Democrats, or now politically homeless former Democrats," who believe that "[o]ver the past 10 years, under the guise of kindness, gender ideology has hijacked the gay rights movement, falsely fashioned itself into the civil rights issue of our time, and led our party wildly astray." *Mission Statement*, DIAG, https://perma.cc/U2X9-D5ZB (last visited Jan. 23, 2026); *Who Is DIAG?*, DIAG, https://perma.cc/KLV9-64RH (last visited Jan. 23, 2026).

13.     DIAG's mission is to "end ideology-driven medicine and sex-denialism," "guid[e] [its] fellow liberals back to reality and reason," "expose[] ideologically-driven medical abuse," "mobilize[] dissenting Democrats," "promote[] free speech and civil discourse," "advocate[] for those harmed by the regressive 'gender' movement," "support[] the protection of female-only spaces, sports, honors, and opportunities," and "hold[] accountable clinicians, lawmakers, institutions, influencers, and media for misleading the public, harming healthy bodies, undermining women's rights, and destabilizing families." *Mission Statement*, *supra*.

14.     DIAG can solicit donations in 14 states that lack a registration requirement, has registered as "Democrats for an Informed Approach to Gender" in 14 other states and with the federal government, is exempt from registration in 6 states, and

was exempt from registration in 3 states until recently crossing revenue-based registration thresholds in them. In total, it has been able to solicit donations in 37 states and has pending registration applications in 6 states. The donations DIAG solicits allow it to advance its mission through advocacy campaigns, meetings, testimony, educational materials, and informing supporters about relevant legislation.

15. But DIAG cannot solicit donations in Illinois because the Secretary enforced the Party Name Provision, blocking DIAG from registering in the state unless it seeks and gains the Democratic Party's permission.

**Defendant**

16. Alexi Giannoulias is the Illinois Secretary of State. He has served as Secretary since January 2023.

17. The Secretary of State administers Illinois's General Not for Profit Corporation Act of 1986. 805 ILCS 105/101.05 (the Act). The Act contains the Party Name Provision. *Id.* 105/104.05(a)(6).

18. As the Act's administrator, the Secretary rejected DIAG's application to conduct affairs, preventing DIAG from soliciting charitable contributions in Illinois unless it seeks and gains the Democratic Party's permission.

19. At all times relevant to this Complaint, the Secretary acted under color of state law and is sued in his official capacity.

## FACTUAL ALLEGATIONS

**A.     The Party Name Provision prevents certain nonprofits from soliciting charitable contributions in Illinois.**

20.     In Illinois, the General Not for Profit Corporation Act of 1986, which contains the Party Name Provision, governs nonprofit registration in the state, regulating domestic (incorporated in Illinois) and foreign (incorporated outside Illinois) nonprofits. *See* 805 ILCS 105; *id.* 105/101.70(a), (b); *id.* 105/101.80(h).

21.     Before a foreign nonprofit may solicit donations in Illinois, the Act requires the nonprofit to apply to conduct affairs with the Secretary. *Id.* 105/113.05 (requiring nonprofits incorporated outside Illinois to "procure authority … from the Secretary of State" before "conduct[ing] any affairs" in the state).

22.     If a nonprofit solicits donations without the Secretary's approval, it is guilty of a Class C misdemeanor. *Id.* 105/116.05(d). It is also a Class C misdemeanor for a nonprofit to use an assumed name without the Secretary's permission. *Id.* 105/116.05(c).

23.     The Secretary must reject a foreign nonprofit's application to conduct affairs in Illinois unless the nonprofit complies with the Act's provisions. *Id.* 105/113.05. One of those provisions is the Party Name Provision.

24.     Specifically, the Party Name Provision provides that

> The corporate name of a domestic corporation or of a foreign corporation organized, existing or subject to the provisions of this Act … [s]hall not contain the words "regular democrat," "regular democratic," "regular republican," "democrat," "democratic," or "republican," nor the name of any other established political party, unless consent to usage of such words or name is given to the corporation by the State central committee of such established political party.

*Id.* 105/104.05(a)(6).

25.    The Act contains a separate provision requiring that nonprofit names "be distinguishable … from the name or assumed name of any domestic corporation" or already registered "foreign corporation" whether those corporations are "for profit or not for profit." *Id.* 105/104.05(a)(3). If a foreign nonprofit is denied registration under this provision, it can still obtain registration using its original name but only if it also elects to adopt an assumed name and agrees to conduct affairs in Illinois only under that assumed name. *Id.* 105/104.05(a)(3)(i)–(ii).

26.    The Solicitation for Charity Act also requires foreign nonprofits to register with the Attorney General before soliciting in Illinois. *See* 225 ILCS 460/2(a) (requiring "[e]very charitable organization" that "solicits or intends to solicit contributions" "by any means whatsoever" to "file with the Attorney General" "prior to any solicitation").

27.    But the Attorney General requires foreign nonprofits that register to solicit donations in Illinois to include a certificate of authority to conduct affairs from the Secretary.

28.    Thus, before a foreign nonprofit can solicit or register to solicit charitable contributions in Illinois, the Secretary must grant its application to conduct affairs in Illinois.

**B.      DIAG intends to solicit charitable contributions in Illinois, but the Party Name Provision prevents it from doing so.**

29.      The Democratic Party of Illinois is governed by the Democratic State Central Committee. *Party Leadership*, Democratic Party of Illinois, https://perma.cc/4TYR-6NUL (last visited Dec. 8, 2025).

30.      The Democratic Party of Illinois is "commit[ted] to supporting gender-affirming care for all Illinoisans." *DPI: Gender-Affirming Care Is Health Care*, Democratic Party of Illinois, https://perma.cc/X7ZJ-G6TG (last visited Dec. 8, 2025).

31.      The Democratic Party of Illinois advocates "expand[ing] easy-to-access, culturally-sensitive gender-affirming care." *Id.*

32.      The DIAG team includes current or former Democratic Party voters who reject the current Democratic Party's position on these issues as sex denialist, illiberal, unevidenced, and a betrayal of the sex-based rights of women and girls.

33.      DIAG holds different beliefs than the Democratic Party of Illinois and advocates a different political path from the one the Democratic Party of Illinois does.

34.      DIAG believes that "biological reality is immutable and we can't continue to throw gay, lesbian, and gender non-conforming/gender-distressed children and vulnerable adults under the wheels of a regressive ideological bus." It "want[s] to see [its] party return to core liberal values," such as "promoting evidence-based medical care," "protecting vulnerable children and adults from predatory medical harm," "upholding the rights of women and girls," and "preserving freedom of speech." *Who Is DIAG?*, *supra*.

35.    And DIAG advocates against "[i]nterventions to alter sex-traits [that] are unsupported by credible evidence, ignore developmental science, destabilize young people, enable maladaptive coping mechanisms, and harm healthy bodies." *Mission Statement, supra*.

36.    DIAG is concerned the Democratic Party representatives it once supported and the "liberal family members, friends, neighbors, relatives, icons, and organizations" with whom it once agreed are now "recklessly supporting this dangerous ideology and shutting down necessary discourse on how this belief system erodes women's rights, destabilizes children, and causes irreversible medical harm." *Who Is DIAG?, supra*.

37.    To advance its mission and views, DIAG organizes advocacy campaigns, encourages people to meet with elected officials and testify at hearings, informs supporters about state and federal legislation, and provides educational materials to help people have informed conversations about issues related to DIAG's mission.

38.    DIAG supports its advocacy by soliciting charitable contributions online, through a general solicitation webpage, social media, and emails to supporters.

39.    DIAG also speaks with supporters in person about how they can support DIAG's mission, including soliciting charitable contributions to DIAG.

40.    DIAG intends to solicit charitable contributions in Illinois, through its general solicitation webpage and in-person solicitation.

41.    Illinois residents have visited DIAG's website, where some have voluntarily provided their contact information and signed up to receive updates on DIAG's

activities, resources to advance DIAG's mission, and opportunities to get involved in DIAG's cause.

42.     Illinois residents are particularly interested in DIAG, with more Illinois residents signing up to receive updates than those in 42 other states.

43.     DIAG typically allows any person to access the donate page on its website and donate to support its cause. DIAG has blocked Internet Protocol (IP) addresses that locate the user in Illinois to prevent DIAG from engaging in charitable solicitation in Illinois until such time as DIAG is registered to lawfully solicit in the state. DIAG has programmed its website to divert Illinois users away from its website's donation page to another page informing those users that they cannot donate.

44.     About 6% of users who have attempted to access DIAG's donate page were redirected to a separate page because their IP address located them in Illinois.

45.     Because DIAG wants to allow internet users in Illinois to access its donation page and to solicit in-person donations in Illinois, DIAG applied on June 3, 2025, to the Secretary's Department of Business Services seeking permission to conduct affairs in Illinois.

46.     Almost two months later, on July 22, 2025, the Secretary rejected DIAG's application to conduct affairs in Illinois, listing procedural deficiencies.

47.     On August 7, 2025, DIAG reapplied to conduct affairs in Illinois.

48.     About three weeks later, on August 25, 2025, the Secretary rejected DIAG's application to conduct affairs in Illinois, listing several procedural deficiencies as well as DIAG's failure to comply with the Party Name Provision.

49. On November 24, 2025, DIAG applied for a third time to conduct affairs in Illinois, correcting the procedural deficiencies.

50. Still, on December 16, 2025, the Secretary rejected DIAG's third application solely for failure to comply with the Party Name Provision. The Secretary cited the Party Name Provision and wrote, "To get qualified in Illinois, you will need [an] approval letter from the National Democratic Party, saying it is ok to use 'Democrats' in your name."

51. The Party Name Provision requires permission only from "the State central committee of [the] established political party," 805 ILCS 105/104.05(a)(6), not from the national political party.

52. The Secretary's December 16, 2025, rejection is attached as Exhibit A.

53. DIAG objects to needing to seek permission from a private actor before exercising its First Amendment rights.

54. DIAG particularly opposes the Democratic Party of Illinois having power to regulate DIAG's First Amendment rights because DIAG advocates directly against elements of what the Democratic Party of Illinois supports, and DIAG formed to oppose those parts of the Democratic Party's current agenda.

55. Because the Secretary rejected DIAG's application to conduct affairs, including (but not limited to) soliciting charitable contributions within the state, DIAG is barred from charitable solicitation and other expressive activities in Illinois.

## INJURIES TO PLAINTIFF

56. The First Amendment protects an organization's solicitation of charitable contributions. *Gresham*, 225 F.3d at 904.

57.    The Secretary violated DIAG's First Amendment rights by rejecting DIAG's application to conduct affairs in Illinois based on noncompliance with the Party Name Provision.

58.    The Secretary's rejection prevents DIAG from meeting with Illinois donors and from soliciting charitable contributions from them, even though DIAG has received interest from people using IP addresses that locate them in Illinois.

59.    "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion)); *accord Christian Legal Soc'y v. Walker*, 453 F.3d 853, 867 (7th Cir. 2006) (noting that "violations of First Amendment rights are presumed to constitute irreparable injuries").

60.    DIAG has suffered and continues to suffer irreparable harm due to the Party Name Provision's restrictions on DIAG's First Amendment–protected expression, which continues so long as the provision remains in effect.

61.    DIAG wants to allow Illinois residents (and others seeking to donate while in Illinois) to access its donation page and donate to DIAG. Because of the Party Name Provision, DIAG has blocked internet users in Illinois from accessing its donation page and donating to DIAG. But for the Party Name Provision, DIAG would allow internet users in Illinois to access its donation page and donate to DIAG.

62.    The Party Name Provision therefore has chilled DIAG's solicitation to such an extent that DIAG, above and beyond avoiding actively soliciting donations

from Illinois residents, has implemented measures to avoid unintentionally receiving charitable donations from Illinois residents and other internet users in Illinois.

63.     DIAG wants to speak with Illinois supporters in person about how they can support its mission, including by becoming donors. Because of the Party Name Provision, DIAG has refrained from soliciting charitable contributions in person from Illinois supporters. But for the Party Name Provision, DIAG would solicit charitable contributions in person from Illinois supporters.

64.     DIAG faces an ongoing and credible threat of continued enforcement of the Party Name Provision, as evidenced by the Secretary's enforcement of the Party Name Provision against DIAG in August and December.

65.     The Party Name Provision will continue to violate DIAG's rights, forcing it to either self-censor its protected expression or risk prosecution.

66.     This irreparable harm will continue absent declaratory and injunctive relief. Every day the Secretary enforces the Party Name Provision to prohibit DIAG from registering to conduct affairs represents an infringement on DIAG's right to solicit charitable contributions to further its political mission, thereby chilling its political speech.

67.     Because the Secretary's ongoing enforcement of the Party Name Provision against DIAG presents an actual controversy within this Court's jurisdiction, DIAG is entitled to a judgment declaring its rights and the legal relations between the parties.

## FIRST AMENDMENT VIOLATIONS
### 42 U.S.C. § 1983
### (Declaratory and Injunctive Relief)

68.    DIAG realleges and incorporates the preceding paragraphs.

69.    The First Amendment provides that "Congress shall make no law … abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. The First Amendment applies to Illinois under the Fourteenth Amendment. *Weinberg v. City of Chicago*, 310 F.3d 1029, 1034 (7th Cir. 2002).

70.    The First Amendment protects DIAG's right to solicit donations.

71.    The Supreme Court has recognized that "charitable appeals for funds … involve a variety of speech interests—communication of information, the dissemination and propagation of views and ideas, and the advocacy of causes—that are within the protection of the First Amendment." *Village of Schaumburg*, 444 U.S. at 632.

72.    "[S]olicitation is characteristically intertwined with informative and perhaps persuasive speech seeking support for particular causes or for particular views on economic, political, or social issues." *Id.*

73.    The Supreme Court thus "place[s] charitable solicitations by organizations in a category of speech close to the heart of the First Amendment" because "restrictions on a charity's request for money necessarily implicate restrictions on speech itself," "risking the flow of information." *Gresham*, 225 F.3d at 904 (citing *Village of Schaumburg*, 444 U.S. at 632).

74. The Party Name Provision regulates foreign nonprofits' ability to name themselves. It prohibits, on its face, foreign nonprofits' names from using common words associated with established political parties—like the word "democrat"—unless the party consents.

75. The Party Name Provision is facially content based and speaker based.

76. The First Amendment generally forbids content-based speech restrictions. "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163. "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Id.*

77. The Party Name Provision is content based because it "singles out specific subject matter"—and here, specific terms—"for differential treatment," requiring the Secretary to treat specific phrases differently based on their communicative message. *Id.* at 169.

78. The First Amendment also generally prohibits speaker-based speech restrictions. Those restrictions "distinguish[] among different speakers, allowing speech by some but not others." *Citizens United v. FEC*, 558 U.S. 310, 340 (2010). "Speech restrictions based on the identity of the speaker are all too often simply a means to control content." *Id.*

79. The Party Name Provision is speaker based because it discriminates among speakers, allowing an established political party's state central committee and nonprofits it blesses to use certain words but denying everyone else the opportunity to use those words. This speaker-based restriction is especially "constitutionally problematic" because it amounts to a "governmental grant[] of power to private actors," "allow[ing] a single, private actor"—here, a party's state central committee—"to unilaterally silence a speaker." *Hill*, 530 U.S. at 734 n.43; *see also Reno*, 521 U.S. at 880 (invalidating statute that "confer[red] broad powers of censorship, in the form of a 'heckler's veto'").

80. Because the Party Name Provision in turn operates to deny registration to solicit donations in Illinois and to conduct operations there to any organization that does not comply with it, it operates as a content-based and speaker-based prohibition on charitable solicitation and other expressive activity in the state by organizations whose names include non-consented-to words the Party Name Provision specifies.

81. "[S]peaker- and content-based burden[s] on protected expression" are subject to strict scrutiny. *Sorrell*, 564 U.S. at 571; *see also Planet Aid v. City of St. Johns*, 782 F.3d 318, 324 (6th Cir. 2015) (describing the Supreme Court as applying "strict scrutiny" to burdens on charitable solicitations); *Pharm. Rsch. & Mfrs. of Am. v. Stolfi*, 153 F.4th 795, 813 (9th Cir. 2025) (same).

82. Strict scrutiny is "the most demanding test known to constitutional law." *City of Boerne*, 521 U.S. at 534. "This stringent standard reflects the fundamental principle that governments have 'no power to restrict expression because of its

message, its ideas, its subject matter, or its content.'" *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755, 766 (2018) (quoting *Reed*, 576 U.S. at 163). "It succeeds in [reflecting] that purpose if and only if, as a practical matter, it is fatal in fact absent truly extraordinary circumstances." *Free Speech Coal., Inc. v. Paxton*, 606 U.S. 461, 485 (2025).

83.     To survive strict scrutiny, laws that are content- and/or speaker-based must serve a compelling governmental interest, be narrowly tailored to achieve the interest, and be the least restrictive means of advancing the interest. *Id.* at 469.

84.     The Party Name Provision fails strict scrutiny because it does not serve a compelling government interest, is not narrowly tailored, and is not the least restrictive means available.

85.     The provision does not serve a compelling government interest because any interest the state has in reserving certain words for established political parties "is very much related to the suppression of free expression," which "is not valid, let alone substantial" or compelling. *Moody v. NetChoice, LLC*, 603 U.S. 707, 740 (2024).

86.     Moreover, the state cannot prove an actual problem exists that it is addressing: Federal law and other states have allowed without issue nonprofits to use the political party names that Illinois's Party Name Provision encompasses. *See United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 822 (2000) ("The question is whether an actual problem has been proved in this case.").

87.     The Party Name Provision is also not narrowly tailored. It is overinclusive because it reaches every nonprofit's name that includes certain terms, regardless

of whether the inclusion of that term impairs a compelling interest. And it is under-inclusive because it excludes for-profit corporations as well as nonprofits who receive the blessing of the existing parties the Party Name Provision identifies.

88. The Party Name Provision is also not the least restrictive means available because the Act already contains an alternative, less restrictive means: The Secretary can reject applications if the nonprofit's name is indistinguishable from another entity's name. 805 ILCS 105/104.05(a)(3).

89. Because the lack of tailoring is "categorical," inherent in the statutory scheme and "present in every case," the provision is invalid on its face and as applied to DIAG. *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021) (noting "a facial challenge is appropriate" in cases where the lack of tailoring is "categorical").

90. The Party Name Provision additionally violates the First Amendment because it is an unconstitutional prior restraint, the "most serious and … least tolerable infringement on First Amendment rights." *Neb. Press Ass'n*, 427 U.S. at 559.

91. "A restriction is a prior restraint if it meets four elements: (1) the speaker must apply to the decision maker before engaging in the proposed communication; (2) the decision maker is empowered to determine whether the applicant should be granted permission on the basis of its review of the content of the communication; (3) approval of the application requires the decision maker's affirmative action; and (4) approval is not a matter of routine, but involves 'appraisal of facts, the exercise of judgment, and the formation of an opinion' by the decision maker."

*Samuelson v. LaPorte Cmty. Sch. Corp.*, 526 F.3d 1046, 1051 (7th Cir. 2008) (quoting *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 554 (1975)).

92.     The Party Name Provision meets all four elements of the standard for identifying a prior restraint.

93.     Specifically, a nonprofit must apply to the Secretary before soliciting charitable contributions. The Secretary is empowered to determine whether a nonprofit can conduct affairs in Illinois, including (but not limited to) seeking charitable solicitation, based on his review of the nonprofit's name. Approval of the application requires the Secretary's affirmative action. And approval is not a matter of routine but involves determining what constitutes an established political party, which in turn involves fact appraisal, judgment, and opinion formation, and whether any relevant established political party has consented to an applicant's use of a term falling within the Party Name Provision.

94.     The Party Name Provision thus operates as an unconstitutional prior restraint, including when applied to DIAG, and is thus invalid on its face and as applied to DIAG. *See City of Lakewood v. Plain Dealer Pub'g Co.*, 486 U.S. 750, 755 (1988) (reaffirming that "one who is subject to" a prior restraint law "may challenge it facially"); *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 133 n.10 (1992) (noting facial challenge to prior restraint depends on "whether there is anything in the ordinance preventing" the decisionmaker from "exercis[ing] his discretion in a content-based manner").

95.     Without declaratory and injunctive relief against the Secretary's en-
forcement of Illinois's content-based and speaker-based Party Name Provision, the
Secretary will continue to violate DIAG's First Amendment rights, preventing it from
soliciting charitable contributions and engaging in other expressive activities in Illi-
nois.

96.     DIAG is entitled to a declaration under 28 U.S.C. § 2201 that the Party
Name Provision is content based, is speaker based, and violates the First Amendment
facially and as applied to DIAG because it fails strict scrutiny and is an unconstitu-
tional prior restraint.

## PRAYER FOR RELIEF

For these reasons, Plaintiff Democrats for an Informed Approach to Gender
respectfully requests that this Court enter judgment against the Secretary of State
and issue the following relief:

A.      Declare that the Party Name Provision violates the First Amendment,
facially and as applied to Democrats for an Informed Approach to Gender;

B.      Enter a preliminary and permanent injunction prohibiting the Secre-
tary of State from withholding registration to Democrats for an Informed Approach
to Gender under its application to conduct affairs in Illinois and from otherwise pre-
venting it from conducting affairs in Illinois;

C.      Enter a preliminary and permanent injunction enjoining the Secretary
of State and his agents, officials, servants, employees, and persons acting in concert
with him from enforcing the Party Name Provision;

D.      Award reasonable attorneys' fees and costs under 42 U.S.C. § 1988 and any other applicable law; and

E.      Award such other relief as the Court deems just and proper.

## JURY TRIAL DEMAND

In compliance with Federal Rule of Civil Procedure 38, DIAG demands a trial by jury on all issues so triable.

Dated: January 27, 2026                    Respectfully submitted,

                                           /s/ *Daniel A. Zahn*
                                           Daniel A. Zahn (pro hac vice forthcoming)
                                           Gabriel Z. Walters (pro hac vice forthcoming)
                                           FOUNDATION FOR INDIVIDUAL
                                              RIGHTS AND EXPRESSION
                                           700 Pennsylvania Ave. SE, Ste. 340
                                           Washington, DC 20003
                                           (215) 717-3473
                                           daniel.zahn@fire.org
                                           gabe.walters@fire.org

                                           /s/ *Colin P. McDonell*
                                           Colin P. McDonell
                                           FOUNDATION FOR INDIVIDUAL
                                              RIGHTS AND EXPRESSION
                                           510 Walnut St., Ste. 900
                                           Philadelphia, PA 19106
                                           (215) 717-3473
                                           colin.mcdonell@fire.org

                                           *Counsel for Plaintiff*

Docusign Envelope ID: 8DC2D287-B5C1-4520-8312-872B4F6ADA14

## VERIFICATION OF JENNIFER STANLEY

Under 28 U.S.C. § 1746, I, Jennifer Stanley, declare as follows:

1.     I am the president of Democrats for an Informed Approach to Gender, the plaintiff in the present case.

2.     I have read the foregoing Verified Civil Rights Complaint.

3.     I have personal knowledge of the factual allegations in paragraphs 12–15, 32–54, and 61–63 of the Complaint and know them to be true.

4.     I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on January 26, 2026.

Signed by:

8171FBFDFD044FA...

Jennifer Stanley