IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Democrats for an Informed Approach to Gender (DIAG),

Plaintiff,

v.

Alexi Giannoulias, in this official capacity as Illinois Secretary of State,

Defendant.

No. 26 C 894

Judge Steven C. Seeger

**THE ILLINOIS SECRETARY OF STATE'S RESPONSE IN
OPPOSITION TO DIAG'S MOTION FOR PRELIMINARY INJUNCTION**

**Introduction**

"Democrats for an Informed Approach to Gender" (DIAG), a nonprofit group organized under the laws of California, wants to solicit charitable donations from Illinois residents by trading on the name of one of two major established political parties, the Democrats. Illinois has had a law on the books for the last 40 years—Section 104.05(a)(6) of the Illinois General Not for Profit Act of 1986 (the "Act")—that prohibits a not-for-profit corporation from using "democrat," "republican," or "any other established political party," among others, in its name unless the corporation receives consent from the political party. The Illinois Secretary of State denied DIAG registration because its name contains the word *democrats*.

Plaintiff argues that it is entitled to preliminary injunctive relief to enjoin Section 104.05(a)(6) as violative of the First Amendment. It presents its challenge as an open and shut case of content-based restriction on speech. But nothing under the First Amendment is so simple. The Supreme Court has held that content-based restrictions on speech related to charitable solicitations do not violate the First Amendment if they are narrowly tailored to serve a sufficiently substantial

interest, and it has permitted restrictions on charitable solicitations in the name of preventing fraud if the mechanism by which the State furthers that interest sufficiently targets fraud and not protected speech. Here, DIAG seeks to solicit charitable contributions while representing that it is a group of "Democrats," but concedes that it is not affiliated with the Democrats and, in fact, advocates in opposition to the Democrats on specific issues. That is misleading and the State has an interest in preventing confusion over the source of charitable solicitations, especially when it implicates confusion over political parties. Thus, as applied to DIAG, Section 104.05(a)(6) does not violate the First Amendment. To the extent DIAG seeks to enjoin Section 104.05(a)(6) on its face, it has not met its heavy burden to do so. This Court should deny preliminary injunctive relief.

### Background

Under the Act, any foreign corporation that wants to "conduct affairs" in Illinois is subject to the Act's requirements and must secure authority to do so from the Secretary of State. 805 ILCS 105/101.70(b), 113.05. When registering with the Secretary, the Act prohibits any corporation from using in its name "the words 'regular democrat,' 'regular democratic,' 'regular republican,' 'democrat,' 'democratic,' or 'republican,' nor the name of any other established political party, unless consent to usage of such words or name is given to the corporation by the State central committee of such established political party[.]" *Id.* § 104.05(a)(6).

DIAG is a nonprofit organization, organized under the laws of California. Dkt. 1 ¶ 12. Its stated purpose is to advocate against the "gender ideology" that it claims has been adopted by the Democratic Party, including the Democratic Party of Illinois. ¶¶ 12, 29–31. DIAG's membership "includes current or former Democratic Party voters who reject the current Democratic Party's position on these issues[.]" ¶ 32. "DIAG holds different beliefs than the Democratic Party of Illinois and advocates a different political path[.]" ¶ 33.

2

DIAG wants to solicit charitable contributions in Illinois, so, as required by Illinois law, it applied with the Secretary as a foreign corporation. ¶ 40. After DIAG corrected some "procedural deficiencies" in its first couple applications, ¶¶ 45–49, the Secretary rejected DIAG's third attempt but only on the basis that the name it sought to register under did not comply with Section 104.05(a)(6). ¶ 50. The Secretary informed DIAG that it needed the Democratic Party's consent to use *democrats* in its name. *Id*.

### Preliminary Injunction Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see also Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020) ("an applicant for preliminary relief bears a significant burden, even though the Court recognizes that, at such a preliminary stage, the applicant need not show that it definitely will win the case."). Instead, the issuance of an injunction is committed to the "sound discretion" of the district court. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). To obtain a preliminary injunction, a plaintiff must show (1) it is likely to succeed on the merits and (2) suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction serves the public interest. *See Winter*, 555 U.S. at 20. The court ordinarily employs a "sliding scale" approach when balancing these factors such that the more likely the plaintiff is to win, the less heavily the balance of harms must weigh in its favor and *vice versa*. *See Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 387–88 (7th Cir. 1984); *see also Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). Injunctive relief must be "tailored to the scope of the violation" and the specific harm established. *See e360 Insight v. Spamhaus Project*, 500 F.3d 594, 604 (7th Cir. 2007).

**Argument**

I.     **DIAG fails to meet its burden to show that Section 104.05(a)(6) is unconstitutional.**

DIAG fails to meet its burden to show that Section 104.05(a)(6) is unconstitutional. The First Amendment prohibits laws "abridging the freedom of speech." U.S. Const. amend. I. DIAG argues that Section 104.05(a)(6) is a content-based restriction that is subject to strict scrutiny and operates as a prior restraint. Dkt. 6 at 7–12. But the standard set by the Supreme Court in the charitable solicitation context is slightly different: content-based restrictions on speech related to charitable solicitations, including those that operate prophylactically as prior restraints, are "subject to exacting First Amendment scrutiny," requiring a law be "narrowly tailored" to serve "a sufficiently substantial interest." *Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*, 487 U.S. 781, 792, 798 (1988).

But before applying any type of scrutiny, this Court must first determine whether DIAG is challenging Section 104.05(a)(6) on its face or as applied. Although DIAG appears to assert both facial and as-applied First Amendment challenges to Section 104.05(a)(6) in its complaint, Dkt. 1, its motion for preliminary injunction is less clear as to whether it is based on a facial or as-applied challenge, Dkts. 5, 6. In its motion, DIAG states that Section 104.05(a)(6) is "invalid on its face *and* as applied," Dkt. 6 at 10 (emphasis in original), but fails to present separate arguments for each type of challenge. DIAG's substantive arguments suggest that it is seeking to preliminarily enjoin Section 104.05(a)(6) as facially invalid, because it argues that the statute fails strict scrutiny in all instances, without reference to the statute being applied to its own corporate name. *Id.* at 7–10. Yet the relief DIAG requests suggests a narrower as-applied challenge when it seeks order that the Secretary "allow *DIAG* to conduct affairs in Illinois and enjoin[ ] him from enforcing" Section 104.05(a)(6). *Id.* at 13 (emphasis added).

4

Facial and as-applied challenges are analytically distinct. To start, there are two types of facial challenges in the First Amendment context. *See United States v. Stevens*, 559 U.S. 460, 472–73 (2010). One is "a typical facial attack," in which a plaintiff must show that "no set of circumstances exists under which [the statute] would be valid." *Id.* at 472 (cleaned up). The other is where plaintiff argues that a law be "invalidated as overbroad" where "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Id.* at 473 (cleaned up). An overbreadth challenge can succeed "only if the law's unconstitutional applications substantially outweigh its constitutional ones." *Moody v. NetChoice, LLC*, 603 U.S. 707, 724 (2024). In contrast, an as-applied constitutional challenge alleges that the law is unconstitutional as applied to the plaintiff's own situation. *Id.* at 724.

This facial/as-applied distinction matters for the relief that the district court can enter. An injunction that "reach[es] beyond the particular circumstances of the[ ] plaintiff[ ]" must "satisfy [the] standards for a facial challenge." *John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010); *see Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464, 475 (7th Cir. 2012). If a plaintiff has not satisfied one of the standards for a facial challenge, then enjoining a statute in all applications is not appropriate. *See Doe No. 1*, 561 U.S. at 200-01. And "a court should adjudicate the merits of an as-applied challenge before reaching a facial challenge to the same statute," *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 683 (7th Cir. 1998), given that "relief should be no greater than necessary to protect the rights of the prevailing litigants," *Rokita*, 54 F.4th at 519 (enjoining statute on its face was "needlessly broad" relief). *See also Moody*, 603 U.S. at 744 ("Even in the First Amendment context, facial challenges are disfavored"); *Miller v. Downey*, 915 F.3d 460, 463 (7th Cir. 2019) (federal courts "should strive to decide constitutional cases narrowly and refrain from answering questions broader than necessary to resolve the case or controversy before them"). After all, the Supreme Court has repeatedly cautioned that injunctive

5

relief should be limited in scope to address a specific problem and not resort to invalidating more of a statute or government action than necessary. *See Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 625 (2020); *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 579–83 (2017).

As explained below, DIAG has not met its burden to show that Section 104.05(a)(6) is unconstitutional. DIAG has not argued and is not likely to succeed on an as-applied challenge to Section 104.05(a)(6) because it survives "exacting" scrutiny appliable to DIAG's charitable solicitation speech. And because Section 104.05(a)(6) survives the as-applied challenge, it is not clear how DIAG could show that Section 104.05(a)(6) is facially unconstitutional in every instance or is substantially overbroad.

### A. DIAG has not argued, and thus cannot show, that Section 104.05(a)(6) is unconstitutional as applied to its name registration request.

Although DIAG makes no specific argument that Section 104.05(a)(6) is unconstitutional as applied to its request to solicit charitable donations using *democrats*, it would not be successful. The applicability of the First Amendment and its measure of protection is highly situational. Here, DIAG wants to register as a foreign nonprofit in Illinois to solicit charitable contributions using the name "Democrats for an Informed Approach to Gender," ¶¶ 14, ¶¶ 38, 40, 45, but Section 104.05(a)(6) prevents it from using *democrats* in its name.

As explained, content-based restrictions on speech related to charitable solicitations, like Section 104.05(a)(6) when applied to DIAG, are "subject to exacting First Amendment scrutiny." *Riley*, 487 U.S. at 798. Such limitations are upheld if they are narrowly tailored to serve a substantial interest. *See id.* at 792. In the charitable speech context, the Supreme Court has set some signposts as to what is permissible. On one side, the Court has thrice considered "prophylactic statutes designed to combat fraud by imposing prior restraints on solicitation when fundraising fees exceeded a specified reasonable level," and found those statutes unconstitutional.

*Illinois ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 612 (2003). In *Village of Schaumburg v. Citizens for Better Environment*, the Court invalidated a local regulation requiring charitable solicitors to prove "'that at least seventy-five per cent of the proceeds of such solicitations will be used directly for the charitable purpose.'" 444 U.S. 620, 624 (1980). In *Secretary of State v. Joseph H. Munson Co.*, the Court struck down a statute prohibiting charitable organizations from "agreeing to pay as expenses more than 25% of the amount raised" in "any fundraising activity." 467 U.S. 947, 950 (1984). And in *Riley*, the Court struck down a statute that "prohibit[ed] professional fundraisers from retaining an 'unreasonable' or 'excessive' fee," required the disclosure of the use of professional fundraisers, and imposed a professional fundraiser licensure requirement. 487 U.S. at 784.

On the other side, the Supreme Court has allowed "fraud actions to guard the public against false or misleading charitable solicitations." *Madigan*, 538 U.S. at 617. In *Madigan*, the Court rejected a First Amendment defense to Illinois's fraud action against for-profit corporations that solicited donations on behalf of a charity while allegedly misrepresenting to potential donors how much of the donations were going directly to charitable causes. *Id.* at 606–09. "The First Amendment protects the right to engage in charitable solicitation," but it "does not shield fraud." *Id.* at 611–12. "So long as the emphasis is on what the fundraisers misleadingly convey, and not on percentage limitations on solicitors' fees *per se,* such actions need not impermissibly chill protected speech." *Id.* at 619. The Court found the State's fraud allegations were "properly tailored" to "target fraudulent representations" and those allegations were subject to "[e]xacting proof requirements" that allowed room for any protected speech to remain outside the fray. *Id.* at 619–20.

Here, DIAG's use of *democrats* in connection with its solicitation of charitable donations, although based on a prophylactic law, comfortably aligns with *Madigan*. DIAG concedes, as it

must, that it is not the Democratic Party or Democratic Party of Illinois; it is, rather, "current or former Democratic Party *voters*," Dkt. 1 ¶ 32 (emphasis added), and the organization "holds different beliefs than the Democratic Party of Illinois and advocates a different political path," ¶ 33. Thus, DIAG seeks to solicit charitable donations while cloaked in the Democratic Party's name, thereby holding itself out as "Democrats," which it is not. This is patently misleading and requires no additional tailoring or proof to come to that conclusion.

The application of Section 104.05(a)(6) here prevents a not-for-profit corporation from misleading potential donors by using an established political party's name to solicit charitable donations without approval. The apparent purpose of Section 104.05(a)(6) is to avoid source confusion, which is consistently found to be a compelling, not just substantial, interest. For example, the Supreme Court has recognized in the election context that the state has a compelling interest in preventing voter confusion, even without requiring the "[s]tate to make a particularized showing of the existence of voter confusion." *Munro v. Socialist Workers Party*, 479 U.S. 189, 193–95 (1986); *see also Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006) (integrity of election process and avoiding voter confusion justified prohibition on last-minute election changes); *Burson v. Freeman*, 504 U.S. 191, 199 (1992) (preventing voter confusion justified speech ban around the polling place); *see also Walden v. Kosinski*, 777 F. Supp. 3d 120, 135 (E.D.N.Y. 2025), *aff'd*, 153 F.4th 118 (2d Cir. 2025) (upholding state law that banned use of "Independence" and "Independent" for political party name of an "independent body" and recognizing state's compelling interest in preventing voter confusion).

Deceptive names that create confusion, even the likelihood of confusion, in the political arena cannot seek refuge "in the mantle of the First Amendment." *Tomei v. Finley*, 512 F. Supp. 695, 698 (N.D. Ill. 1981) (issuing preliminary injunction because of strong likelihood of confusion resulting from political party's use of acronym designed to deceive voters into thinking candidate

was of opposing political party); *accord Democratic Party of NJ, Inc. v. Devine*, No. 22-cv-1268, 2022 WL 4976616, at *3 (D.N.J. Oct. 4, 2022) (rejecting First Amendment defense to trademark claim by owner of "New Jersey Democratic Party" against use of "NJDEMS.com"). Source confusion is a "form[ ] of public deception," which complements the compelling interest in preventing fraud, which the Supreme Court has always recognized is unprotected. *See Madigan*, 538 U.S. at 612.

And the application of Section 104.05(a)(6) to DIAG is narrowly tailored to prevent confusion because DIAG is not the established political party, the Democrats. Thus, the mere use of *democrats* by DIAG when it is not, in fact, the Democrats or affiliated with the Democrats is wrong, confusing, and misleading. The application of Section 104.05(a)(6) here only prohibits DIAG from trading on the term to create a misleading association with the Democrats and then soliciting charitable donations under that name; it could not be any narrower. In that respect, Section 104.05(a)(6) is unlike the laws that the Court invalidated in *Schaumburg*, *Munson*, and *Riley* that used blanket threshold percentages or "unreasonableness" to justify limitations on charitable solicitations when those benchmarks only suggested that fraud was afoot. Rather, Section 104.05(a)(6) targets the precise term—*democrats*—that DIAG acknowledges is a misrepresentation of affiliation, meaning it is tailored to target the very source of confusion. In other words, the misrepresentation of DIAG's affiliation is not a degree of fraud, as was the case in *Schaumburg*, *Munson*, *Riley*, and even *Madigan* (which was subject to a higher burden to prove the alleged fraud), but instead is a *per se* misrepresentation because there is no dispute that DIAG is not affiliated with the Democratic Party.

DIAG argues, however, that the law is not narrowly tailored (under strict scrutiny) because it is over and under inclusive. DIAG argues Section 104.05(a)(6) is overinclusive because it could potentially bar the "Canada-based Federation for a Democratic China." Dkt. 6 at 9. But it is unclear

whether the "Federation for a Democratic China" is a not-for-profit entity that even solicits charitable donations; this example is dubious and does not show that Section 104.05(a)(6) is not narrowly tailored as applied to DIAG. DIAG also submits that the law is underinclusive because it excludes for-profit corporations, Dkt. 6 at 9, but for-profit corporations, as explained below, are subject to their own name limitations and this hypothetical is not specific to the solicitation of charitable donations.

In sum, Section 104.05(a)(6) reflects the State's compelling interest in dispelling source confusion related to political parties and charitable donations, and the application of Section 104.05(a)(6) to DIAG's name to solicit charitable donations is narrowly tailored to remove the confusing element—*democrats*. DIAG does not and cannot show that the application of Section 104.05(a)(6) to its name registration violates its First Amendment rights.

### B. DIAG fails to meet its burden to show that Section 104.05(a)(6) is facially unconstitutional.

To the extent DIAG seeks to preliminary enjoin Section 104.05(a)(6) as facially invalid, it has not met its burden. Facial challenges are "hard to win." *Moody*, 603 U.S. at 723. Again, there are two types of facial challenges. In the "typical" case, a plaintiff asserts that under no circumstances is a state law constitutional; and the other type of challenge attacks a law as overbroad in that "a substantial number of its applications are unconstitutional, judged in relation to [its] plainly legitimate sweep." *Stevens*, 559 U.S. at 472–73 (cleaned up).

As to the typical attack, DIAG cannot show that Section 104.05(a)(6) is unconstitutional in every application. Nor does DIAG appear to advance this type of challenge. As explained above, restrictions on charitable solicitations are subject to "exacting" scrutiny and DIAG has not shown that Section 104.05(a)(6) is unconstitutional in every instance, including in its own case.

Regarding the overbroad challenge, DIAG has not shown that a substantial number of applications of Section 104.05(a)(6) result in unconstitutional outcomes. An overbreadth challenge is "strong medicine" and employed "sparingly and only as a last resort." *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973). To prevail on an overbreadth challenge, a plaintiff must demonstrate that a law's overbreadth is "not only . . . real, but substantial as well, judged in relation to the [challenged law's] plainly legitimate sweep" and that no "limiting construction" or "partial invalidation" could "remove the seeming threat or deterrence to constitutionally protected expression." *Id.*

DIAG points to one hypothetical example of Section 104.05(a)(6) potentially barring the "Canada-based Federation for a Democratic China." Dkt. 6 at 9. This single example is insufficient to suggest *substantial* overbreadth, and the preceding 40 years without a similar challenge to this law weighs heavily against the inference that there are a substantial number of unconstitutional applications out there. In any event, as explained above, it is unclear whether the Federation for a Democratic China is a not-for-profit corporation that solicits charitable donations, such that it would even be subject to this law. DIAG also contends that the law is underinclusive because it excludes for-profit corporations. *Id.* But the Act only covers not-for-profit corporations, while for-profit corporations are subject to other laws over their names. *See* 805 ILCS 5/4.05. And for-profit corporations do not solicit charitable donations, so any name restrictions would be subject to some other First Amendment analysis. At the very least, DIAG has not shown that facial invalidation is appropriate.

## II. Aside from its arguments on the merits, DIAG does not show that the remaining preliminary injunction factors weigh in its favor.

The remaining preliminary injunction factors of irreparable injury, balance of the equities, and the public interest counsel against preliminary injunctive relief. Under the "balance of harms"

portion of the analysis, where the Court weighs the preliminary injunction factors, Plaintiff must establish that the harm it would suffer without the injunction is greater than the harm that preliminary relief would inflict on the defendant. *See Mich. v. U.S. Army Corps of Eng'g*, 667 F.3d 765, 769 (7th Cir. 2011). In the First Amendment context, irreparable harm and public interest can follow the merits, *see Elrod v. Burns*, 427 U.S. 347, 373 (1976), and DIAG rests entirely on that presumption, Dkt. 6 at 12–13.

But the balance of equities and the public interest here deserve a closer look. When the government is the opposing party, these two factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009); *see also Pursuing America's Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016) ("The government's interest *is* the public interest.") (emphasis in original). As explained in the merits, the State's interest here is preventing confusion over charitable solicitations, that is, preventing a foreign not-for-profit corporation from soliciting donations when using *democrats* in its name when it is not affiliated with the Democratic Party. The resulting confusion over affiliation harms the public, and thus tips in favor of denying preliminary injunctive relief.

Moreover, the State has a strong interest in enforcing its own democratically enacted laws. "Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (quotations omitted). Indeed, a federal court should issue injunctions against the State only "sparingly." *Rizzo v. Goode*, 423 U.S. 362, 378 (1976). This strong preference against such intrusive injunctive relief is primarily founded on "delicate issues of federal state relationships," premised on "the principles of equity, comity, and federalism." *Id*. at 379–80 (quotations omitted). The State's interest in protecting its citizens from confusion over their charitable contributions under a law that has had no challenge for almost 40 years weighs in

12

favor of denying preliminary injunctive relief. The preliminary injunction should be denied for this reason as well.

## Conclusion

For these reasons, this Court should deny preliminary injunctive relief.

Dated: March 3, 2026

Respectfully submitted,

Aaron T. Dozeman (IL 6308909)
Senior Assistant Attorney General
Office of the Illinois Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-3000
*Aaron.Dozeman@ilag.gov*

Alexi Giannoulias, Illinois Secretary of State,
in his official capacity

By:  s/ Aaron T. Dozeman
     Senior Assistant Attorney General

13